UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERVIN JUNIUS THORNTON, II,<br><br>Defendant. | Case No. 97-50021<br>Honorable Laurie J. Michelson |

**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION [672] AND PETITION FOR *AUDITA QUERELA* [675]**

Ervin Thornton II has served nearly 30 years of his life sentence for various controlled substance, firearm, and homicide convictions. He spent nine successful months out of prison in 2022 before the Sixth Circuit reversed his previous grant of compassionate release. This Court subsequently found that Thornton's success on release, and several other "catch-all" reasons he raised, did not constitute extraordinary and compelling circumstances re-entitling him to compassionate release. (ECF No. 671.) Thornton now seeks reconsideration of that ruling. (ECF No. 672.) But it too falls short of the high bar for relief.

**A.**

Indeed, motions for reconsideration are disfavored. E.D. Mich. LR 7.1(h)(2). They may only be brought if a different outcome is warranted for one of three recognized reasons: (1) the Court made a mistake, (2) there has been an intervening change in controlling law, or (3) "new facts" are available. *Id.* Thornton focuses on the

first reason: mistake. (ECF No. 672.) So he must show that the Court made a mistake, a clear error, and that, if that clear error was corrected, the outcome would be different. *See Roe v. Ford Motor Co.*, 439 F. Supp. 3d 922, 925 (E.D. Mich. 2020) (providing that party seeking reconsideration under Local Rule 7.1(h) "must show that the district court clearly erred, that the court's initial decision will change if the clear error is corrected, and that the error was based on the law and record as it stood when the district court made its initial decision"); *Good v. BioLife Plasma Servs., L.P.*, 647 F. Supp. 3d 555, 559–60 (E.D. Mich. 2022) ("For purposes of reconsideration [under Local Rule 7.1(h)(2)], mistakes and outcomes are mutually exclusive . . . [T]he purported mistake must be some substantive error in the court's legal analysis or factual findings based on the record at the time of the decision—it cannot be the outcome itself."). This showing is particularly difficult to make here since compassionate release is left to this Court's discretion. *See, e.g.*, *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020) (explaining that the Sixth Circuit reviews a district court's denial of compassionate release for an abuse of discretion).

**B.**

As a reminder, under "compassionate release," the Court "may reduce a prisoner's otherwise-final sentence if it determines that (1) 'extraordinary and compelling reasons' warrant a reduction, (2) a reduction is 'consistent with applicable policy statements issued by the Sentencing Commission,' and (3) the § 3553(a) factors, to the extent applicable, support a reduction. *United States v. Bricker*, 135 F.4th 427, 433 (6th Cir. 2025) (citing § 3582(c)(1)(A)(i)). Thornton believes the Court

erred in finding no "extraordinary and compelling" reason to support his release. (ECF No. 672.)

**1.**

Thornton's first assignment of error is that the Court "analyzed each of [his] individual [extraordinary and compelling] circumstances separately" and "[w]hile each factor may not independently justify relief, the amended [§ 1B1.13] expressly allows the Court to evaluate the totality of the circumstances." (*Id.* at PageID.2263.) This was not error because the Sixth Circuit has "said that 'combining unrelated factors, each individually insufficient to justify a sentence reduction,' doesn't 'amount to more than the sum of their individual parts.'" *United States v. Hall*, 179 F.4th 504, 515 (6th Cir. 2026) (quoting *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022)). Indeed, in reversing Thornton's grant of compassionate release, the Sixth Circuit reiterated that "Congress was emphatically clear that rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," and that "the sum of each individually insufficient—and impermissible—factor [did] not amount to an 'extraordinary and compelling' reason to reduce Thornton's sentence." *United States v. Thornton*, No. 21-1418, 2023 U.S. App. LEXIS 5134, at *5 (6th Cir. Mar. 1, 2023) (cleaned up). Moreover, in analyzing Thornton's asserted extraordinary and compelling reasons under § 1B1.15(b)(5), the Court considered them both separately and together. (ECF No. 671.)

**2.**

Next, Thornton contends the Court erred in failing to meaningfully address the numerous district court cases he cited "demonstrating that federal courts across the country have granted compassionate release to defendants convicted of murder and other exceptionally serious offenses where the totality of the circumstances justified relief." (ECF No. 672, PageID.2264.) This also does not warrant reconsideration. First, failing to consider non-binding case law is not erroneous. *See England v. Denso Int'l Am.*, No. 22-11129, 2024 WL 1832990, at *3 (E.D. Mich. Mar. 27, 2024) ("As a matter of law, it cannot be a palpable defect in this court's original opinion that it did not follow an interpretation which has no precedential weight.") (quoting *White v. N. Mich. Reg'l Hosp.*, 698 F. Supp. 2d 950, 963 (W.D. Mich. 2010)). Second, the seriousness of the offense is part of the § 3553(a) analysis. It is not an extraordinary and compelling reason under § 1B1.13. And third, the essence of Thornton's argument, that his sentence is too long even for murder, especially considering his rehabilitation, ignores that this basis was the essence of the Sixth Circuit's previous reversal of the grant of compassionate release.

**3.**

Relatedly, Thornton argues that more recent statistics from the Sentencing Commission reveal that average murder sentences during the past few years have been much lower than life. (ECF No. 672, PageID.2265.) "These objective sentencing statistics," says Thornton, "strongly support [his] argument that his sentence is usually long within the meaning of amended U.S.S.G. 1B1.13 and should be

considered as one component of the Court's overall extraordinary-and compelling analysis." (*Id.*) But the portion of the policy statement providing a sentence reduction for an unusually long sentence imposed before a change in the law, § 1B1.13(b)(6), has been invalidated. *See Bricker*, 135 F.4th at 430 (6th Cir. 2025) (holding that the unusually-long sentence provision in § 1B1.13(b)(6) is invalid); *see also Rutherford v. United States*, 608 U.S. 454 (2026) (holding that nonretroactive changes in sentencing law cannot constitute extraordinary and compelling reasons for a sentence reduction). And while "[t]he Court is mindful that no amount of time is insignificant for defendants serving sentences of imprisonment . . . compassionate release is not a sentencing 'do-over.'" *United States v. Dickerson*, No. 09-10096, 2021 WL 674008, at *5 (C.D. Ill. Feb. 22, 2021).

**4.**

Thornton next contends that the Court misunderstood his family circumstances. (ECF No. 672, PageID.2265.) He explains that he is not contending that his mother is incapacitated pursuant to § 1B1.13(b)(3)(C), which identifies as an extraordinary and compelling circumstance "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." (*Id.*) Thornton's concern is that it may be too late for him to care for her if he has to wait until she becomes legally incapacitated. (*Id.* at PageID.2266.) The Court certainly understands and is sympathetic to the family hardships caused by the harshness of Thorton's sentence. But if his mother's situation does not fall within the scope of § 1B1.13(b)(3), it does not fall within the scope of § 1B1.13(b)(5), which provides a

catch-all for circumstances "similar in gravity to those described in paragraphs (1) through (4)." And the sad "reality is that '[m]any if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.'" *United States v. Crumpler*, No. 19-755, 2026 U.S. Dist. LEXIS 87429, at *10 (N.D. Ohio Apr. 21, 2026); *see also United States v. Toaz*, No. 20-1561, 2020 U.S. App. LEXIS 33439, at *5–6 (6th Cir. Oct. 22, 2020) ("[M]any inmates have aging parents who need care.").

The three cases cited in Thornton's supplemental briefs (ECF Nos. 673, 674, and 676), do not alter this result. For example, he relies on *United States v. Malik First Born Allah Farrad*, No. 14-110, 2026 U.S. Dist. LEXIS 145865 (E.D. Tenn. July 1, 2026), which is the only cited case from this Circuit. There, the defendant had served more than 10 years of his 188-month sentence for being a felon in possession of a firearm, had been transferred to a residential reentry center for a few months, and was then released to home confinement where he had steady employment and only 13 months remaining on his sentence. (*Id.*) His mother had significant physical and mental health issues, was homeless, and had no one else to care for her. This combination of factors is not analogous to those presented here. The same is true of the other cases Thornton relies on.

**5.**

Thornton also relies on "newly discovered medical records" to support his claim that his health issues provide an extraordinary and compelling reason for compassionate release. (ECF No. 672, PageID.2267.) These records may be "newly obtained," but that does not make the information newly discovered. More

problematically, they provide no information about his medical conditions or the treatment being provided for them. The two pages consist entirely of a May 1, 2024, authorization for release of medical records and a May 14, 2026, fax cover sheet. (*Id.* at PageID.2271–2272.) There is simply no basis for Thornton's contention that they "demonstrate[e] that [he] previously sought treatment but received no meaningful response." (*Id.* at PageID.2267.) In short, these records do not establish the extraordinary and compelling circumstance that Thornton "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." § IB1.13(b)(1)(C).

**6.**

Lastly, Thornton raises his successful reentry into society during his prior release and the "shock" of then having to return to prison. (ECF No. 672, PageID.2267–2268.) The Court understood that this was the essence of his underlying motion. And the Court considered it. Thus, it is not a basis for reconsideration. *See Southfield Educ. Ass'n v. Bd. of Educ. of Southfield Pub. Sch.*, 319 F. Supp. 3d 898, 901 (E.D. Mich. 2018) ("Old arguments re-presented will not justify reconsideration."). But it may be a strong argument for appeal, which is where Thornton may now raise it.

**7.**

One final matter. While the motion for reconsideration was pending, Thornton filed a petition under the All Writs Act, 28 U.S.C. § 1651(a), for a writ of *audita*

*querela*. (ECF No. 675.) The petition reiterates and summarizes well all the reasons Thornton believes he should be released from the remainder of his sentence. (*Id.*) He asks the Court to "determine that, under the extraordinary totality of post-judgement[sic] circumstances presented, further enforcement of Thornton's remaining term of imprisonment would be fundamentally inequitable and contrary to conscience" and to "direct that the remaining custodial portion of Thornton's sentence no longer be enforced." (*Id.* at PageID.PageID.2296.) To try to avoid certain procedural hurdles, Thornton repeatedly states that he is not challenging the sentence or seeking to vacate the judgment, which is the province of either a compassionate release motion or a motion under 28 U.S.C. § 2255, for which Thornton would need to obtain permission from the Sixth Circuit. *See, e.g.*, *Davis v. United States*, No. 26-1180, 2026 U.S. App. LEXIS 16775, at *3 (6th Cir. June 9, 2026) (defendant's *audita querela* petition should have been transferred to the Sixth Circuit as a second or successive § 2255 motion).

But careful pleading aside, this is not relief the Court can provide. The Sixth Circuit has explained that "[t]he writ of *audita querela*—'an ancient writ used to attack the enforcement of a judgment after it was rendered'—is unavailable 'when relief is cognizable under § 2255.' It is also unavailable to a prisoner who has not yet 'served his sentence and been released from custody.'" *United States v. Riley*, No. 18-2204, 2019 U.S. App. LEXIS 19498, at *3 (6th Cir. June 27, 2019) (citations omitted). Because Thornton's requested relief is cognizable under § 2255 and "[b]cause [he] is still serving his sentence with respect to his original conviction, the writ of *audita*

*querela* is unavailable to him." *Id.*; *see also Pilla v. United States*, 668 F.3d 368, 372 (6th Cir. 2012) ("If, in substance, a claim falls within the scope of § 2255(a), it should be treated as such regardless of any 'inventive captioning' by the prisoner."); *Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004) ("Any motion filed in the district court that imposed the sentence, and substantively within the scope of § 2255, is a motion under § 2255, no matter what title the prisoner plasters on the cover. Call it a motion for a new trial, arrest of judgment, mandamus, prohibition, coram nobis, coram vobis, audita querela, certiorari, capias, habeas corpus, ejectment, quare impedit, bill of review, writ of error, or an application for a Get-Out-of-Jail Card; the name makes no difference. It is substance that controls.").

In short, Thornton's request to be released from further imprisonment may not be obtained through a petition for *audita querela*.

**C.**

For these reasons, Thornton's motion for reconsideration (ECF No. 672) and petition for writ of *audita querela* (ECF No. 675) are DENIED.

IT IS SO ORDERED.

Dated: November 17, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE